I do want to indicate that presiding justice Zinoff was unable to be here because of some of the issues that were brought up in the case and we do it across the field so I think we have some different time set up, 15 minutes for the state, 20 for the defendant, 10 for the state and 5 for the defendant if rebuttal is required. In terms of the 15 minutes to be rebuttal, can I use it in scope to subject my appeal or can I address both my appeal and my appeal? I just want to make sure I understand. Normally you would get 15 minutes to rebut the defendants. You can make some comments on that unless there is some objection. You can make your comments on the defendant's appeal too. You may proceed. Thank you. May it please the court. My name is Patrick Daly. I am from the state's attorney's appellate prosecutor's office in Mount Vernon. I represent the people of the state of Illinois in this case. As the court is aware, both the state and the defendant have filed an appeal on this matter. This stems from a post-conviction proceeding which was conducted at the circuit court level in a bifurcated fashion. The first part of the post-conviction proceeding dealt with the legal issue of whether the defendant was properly given 402 admonishments at the time of his plea vis-a-vis whether his plea was knowing and intelligently made based on the court's admonishments at the time. The second half after proceeding, that was conducted purely on a brief basis, legal arguments, and then proceeded to another bench re-hearing to deal principally with the defendant's arguments regarding ineffective assistance of trial counsel at the time of the plea. After the proceedings were over, the court issued an order which essentially granted remedy for both the defendant and for the state. In this regard, what the court held is that it found that the 402 admonishments were proper and the defendant's plea was knowing and voluntarily made, but determined that it wasn't clear from the record whether the circuit court, the sentencing judge, had believed erroneously that it was required once it made a finding that the defendant's actions were brutal or heinous and indicative of a wronged cruelty to impose no less than a 60-year sentence. In other words, is that finding required trigger a mandatory minimum 60-year sentence. Because the court was unclear about what the circuit court's belief was based upon its review of the transcript of the sentencing hearing, it ordered a new sentencing hearing, but otherwise denied a post-conviction petition. What was your position with respect to the court's verbiage or what they said on the day they handed down that sentence concerning the extended time? I would say that I don't believe it's really quite that ambiguous at all. Let me emphasize right now, but I want to move backwards a little bit before I answer this question, is that even if it is ambiguous, ambiguity is always resolved in favor of the presumption that the circuit court knows and correctly applies the law. So just by virtue of the court's finding itself should not have prompted an order requiring a sentencing hearing. However, if you look at the transcript of the sentencing hearing itself, what happens It says at the beginning when it's kind of decided whether or not the extended term sentence would be something to be considered. It says that, quote, if there are certain circumstances present, an extended term sentence could be given up to 100 years for natural life in prison. Now, that particular formulation is exactly correct. We know that when an extended term sentence is found or is appropriate, it increases the Now, that was a corrective admonishment that he gave on the day of sentencing, or on the date that he was guilty. He's correct. He admonished him at the time of the guilty plea 2,100 years for unnatural life. Now, on two or three prior occasions, did he not admonish him as corrective? I don't know if it's a particular judge, but he did receive incorrect admonishments earlier than that. At the time, I believe it was the first appearance, and then there may have been an arraignment after preliminary hearing. At the time, the jury later was really the first time that the defendant got the proper admonishments. The court initially said 20 to 80 years, and then the prosecutor, I think, interjected and said, no, it's actually 100, and then the court said, okay, it's 20 to 100 for unnatural life. So could one reasonably argue that he was really falsely induced into entering the plea on the day of sentencing based upon some improper information that he received from the judge as well as, arguably, from his attorney? Well, let me start with the judge, first of all. I would say no. The reason for that being that, first of all, it doesn't matter if it's a strictly legal conclusion here. Rule 402 lays out the proper admonishments, the required admonishments, at the time of the guilty plea. So it's not incorrect, I suppose, to focus on the admonishments given at the time of given proper, you know, whatever the admonishments are, in this case being the sentencing range, that's appropriate for the charge. Secondly, on top of that, I would also note in this case that the defendant did not testify at the post-conviction hearing. So what we have here is we don't really have any kind of subjective view of what the defendant thought in terms of what the court's admonishments were. So the parties here agreed, both parties, the defense and the prosecution, that we're going to go strictly by what the record shows and what the court's admonishments were. And the circuit court ruled that at the time of the plea, which is what Rule 402 directs itself to consider, was the defendant given the proper minimum, maximum penalty admonishment in regards to the charge of the guilty plea. The court concluded that that is correct. The defendant however had a certain misapprehension even after that. It's not clear from the record at all. I would point out too, emphatically, that when you look at the 402 plea, the defendant, the court went through the defendant specifically. Do you understand? Do you understand that this is a possibility? Do you understand this is a possibility? The defendant replied in the affirmative. So in regards to the circuit court's admonishments and whether the defendant had knowledge of that, I believe that the circuit court's ruling was legally correct. In this regard, this court reviews this demilitarized because it's a legal issue. But I believe that the record certainly supports the circuit court's conclusion that the defendant received the proper forms of admonishment. Now with respect to what his counsel told him, that question I think sort of ties in with also the notion of whether he received ineffective assistance from counsel at the time of the plea. So I'll sort of take that at the same time there. I'm not disputing, Steve Adler disputed necessarily that the defendant received incorrect advice from his attorney. The attorney, Mr. Effing Shurger, William Shurger testified that he had kind of, he keeps sort of a hazy recollection of what happened in regards to what he told the defendant when he did the number. He thinks that he told him that he said he can get no more than 40 years. A witness called out the defense, basically corroborated that and said that he had told him he would not get any more than 40 years. That being the case, of course, we have to kind of juxtapose that with the court's admonishments at the time of the guilty plea to kind of see what effect that had on the defendant. An ineffective assistance from counsel claim, of course, has two components. One is that the attorney was, you know, professionally deficient. The second component is whether the defendant suffered prejudice. We cite a case called Hill v. Lockhart, which I think lays out in pretty succinct fashion what the components of prejudice are in regards to this matter. It's not enough to meet the prejudice problem to simply say that the defendant's attorney, and the defendant's attorney does have, I believe, an ethical and a legal obligation to correctly advise his client of the range of sentences, but Hill says that that being the case nonetheless, after some showing that but for the attorney's incorrect advice, he would not have played real again, then the defendant can't meet the prejudice problem. Now, Hill is one of these things where there's a habeas petition, I believe, that was dismissed on the pleading stage. But I think the legal basis there is equally applicable here. When this went through an evidentiary hearing, the defendant called witnesses, but the defendant did not testify. The defendant submitted an affidavit. Now, that is entirely appropriate under 122-6 to proceed that way in an evidentiary hearing. But what it does is it sort of gives you four corners of what the defendant's testimony is. In a nutshell, the defendant said, well, yes, he told me that I would get no more than 40 years, and then I played guilty. I decided to play guilty. There is no indication, number one, that much more the fact that Sugar had given him this incorrect advice, he would have proceeded to trial. In fact, Sugar testified that from the get-go the defendant had indicated a willingness to not go to trial, wanted to play guilty, didn't want to put up any defense. Now, the defendant's affidavit stated, quote, well, I'm not going to quote because I don't have it in front of me, but I believe what it said that I never told my attorney that I wanted to play guilty up until the time when he did play guilty. Any other cases that you're aware of that have adopted this Hill standard? I'll hand that over. I don't know. I rely strictly on Hill because, I mean, Hill and Strickland sort of go hand-in-hand, so given the fact that Strickland was applicable to Illinois, then I think it's a safe statement that we would equally apply him on that. That's the constitutional formulation of an effective assistance counsel. So, I mean, I think that was quite appropriate, so I'm not authoritative in which, but I think it's probably suffice to say that since Hill is in the encapsulation of Strickland versus Washington, then it defines the parameters. And its formulation is not unusual because oftentimes we see this sort of bus-forward rule being applied in a prejudice situation. You see, like, in effective assistance of counsel arguments. So should we take into consideration whether or not the defendant would be able to succeed at trial? I'm reluctant to agree to that. You know, I mean, typically in any situation you have to look at the strength of the evidence. Of course, since this was a guilty plea, the evidence, you know, is strong because the defendant confessed to a particularly horrendous crime. You know, the defendant still nonetheless has a right to a trial, irrespective of the strength of the evidence or not. It's their constitutional right. That's why, you know, if you look at Hill, Hill made no conclusion whatsoever about the strength of the state's or the government's evidence in that case. And I think that that probably makes sense in the context of a guilty plea. You know, obviously in a trial situation where the evidence is fleshed out and you can make that, you know, objective determination of the strength of the evidence, that you can make an easier determination, you know, that does not ultimately result in a different verdict. But here's a guilty plea. The verdict is a foregone conclusion that's available to the defendant's right to it. So to answer that question, I would say I don't think that that's a particularly important consideration. I think what the important and principal consideration is whether that improper admonishment materially influenced the defendant to the extent that he would not have gone forward with a guilty plea had he known the correct. And I think that the fact that the judge's admonishments were pretty clear on that matter with regards to the maximum sentence sort of diminishes even the insinuation that the defendant was wrongfully guilty in this case. I do want to point out, and it's a little unorthodox for me to say so, given the fact that I have to acknowledge that there were a lot of inconsistent admonishments, leading up to the time of the jury error and the time of the guilty plea. But in no time, and I think the Court completely refers to this in its order in this case, in the post-conviction disposition, that in no time did the circuit court ever tell the defendant that he had a maximum sentence of anything less than 60 years. When we say 60, we say 80, we say hundreds of lives. So it sort of defies logic to think that given all of this, in regards to how one may say we might confuse the defendant, that there is some confusion and that he had placed some particular special emphasis on his 40 years or his clientele in the face of everything else that he heard from the Court. And that was one other thing that the Hill Court also mentioned, is that there is nothing in that case which showed that that particular misadmission was the nucleus, if you will, of the whole idea of pleading guilty. In other words, it was the special circumstances that induced him, Hill Court, I believe, a parole length. In this case, it would be the length of the sentence, the possible maximum length of the sentence. The issue with respect to, I'm sorry, The issue with respect to the extended term sentencing and whether the Court properly admonished him or what their intent was or their understanding at the time. What is our standard of review? The standard of review is de novo. The only issue in this case that doesn't apply to de novo, I think, would be probably the infractiousness of counsel. The effective efficiency? That would be manifest there, based on the fact that there was testimony. Anything else in regards to the efficiency of the admonishment, The record is what it is. And, of course, it's a strictly legal question. I think the case law is pretty abundantly clear that that's a de novo standard of review. So, I mean, to me, it has an analogy more than it has a concession to anything else. And this Court's not bound on strict court's determination in this regard. But I think the record is fairly clear. I just want to get back to the state of the field. There's a presumption that the trial court knew and correctly applied the law. It's rebuttable that the record affirmatively shows that that's not the case. And the argument from the defense is that the record does affirmatively show that, based upon this series of inconsistent acknowledgments that you're talking about. Well, first of all, the focus is on what the court admonished at the time of the guilty, which is what 42 directs itself to. So, when the circuit court and the post-conviction court made the determination, if I could finish here, please. When the circuit court made the determination that it wasn't clear from the record that the court knew that or made a mistake in belief that there was a mandatory minimum based on the finding of an extended term sentence, the court has directed itself strictly to the sentencing, excuse me, that the plea court's admonishments to the defendant and the sentencing court, the sentencing court belief about how a minimum sentence or is there a minimum sentence for a finding of an extended term sentence. So, I believe that although there have been inconsistent admonishments leading up to that time, this court has to focus, as a matter of law, on the admonishments at the time of the plea because Rule 402 states in its terms, these are the admonishments that would be given at the time of the plea. Okay, I have not found in a case that earlier admonishments necessarily in effect admonishments at the time of the plea when those admonishments are correct. So, when the court, once at the time of the plea, this is when the defendant makes that decision to relinquish his right to the trial and to plead guilty, you know, it's an imperative that he, at that time, it may not matter to him at the time of the first appearance or arraignment, but at the time of the plea when he's giving up something, he needs to know exactly what it is he's giving up and what it is he's facing as a result of his pleading guilty as an open plea. So, that being the case, having been given the proper admonishments and being questioned by the court, do you understand this, and the defendant acknowledging that, I think that while it's troublesome the courts don't know, for some reason, the proper range of the time of these other hearings, if the time of the plea and the admonishments are correct, and that's the time the defendant is waiving his right to a trial and going to a guilty plea, if it appears to him that he did so knowingly and voluntarily and that he did so with the knowledge of what this court was telling him, is the possibility that he was facing, then that satisfies the constitutional requirements of Rule 402 or the embedment of Rule 402. Thank you. You're welcome. Thank you, Your Honor. Mr. Richardson, Mertz or Mertz? Mertz. Mertz, thank you. Have a seat. There is a threshold issue, counsel. The brief seems to argue both ways. Maybe you do that for a reason. What is your position on whether or not there is, in fact, a mandatory minimum extended term sentence once the court makes a finding of brutal meanness? My position, Your Honor, is that there is, indeed, the possibility of a mandatory minimum extended term sentence. You say the possibility. I mean, if you were there, it's not. The law is either once the court makes the finding, I find that this was brutal meanness because of warrant of foreign cruelty, and then my question to you is once the court makes that finding, is the court then bound to sentence the person to no less than 60 years? Yes. And by that answer, Your Honor, I do so acknowledging that the government has argued that my answer represents a misconception of the law. In support of my answer, I would direct the court to the very language of the statute which provides where the judge finds that such act is in the presence, he may sentence the defendant to the following. Now, the government has focused on the language may, but the language continues. For first-degree murder, a term shall be not less than 60 years and not more than 100 years. If, indeed, it was the intention of the legislature when crafting this statute to not provide a mandatory minimum, then it would seem absolutely meaningless to include language in such mandatory framework. The statute shall be not less than 60 years clearly conveys a mandatory minimum. I would also add, Your Honor, that whether the court determines that the statute does indeed provide a mandatory minimum once the trial court made a finding of the perfection of brutal and heinous conduct, thereby creating a mandatory minimum, or if this court were to find that, indeed, there is a mandatory minimum, it is clear from the record that the trial judge believed that the statute provided a mandatory minimum, and that mandatory minimum was a fact about which the defendant was never that much. That's 5-8-2-A, which was the statute in effect at the time of making it. Is that the same language for things such as if a person has a prior felony of the same class, that that person is eligible for extended terms, say, within the last 10 years? Is that the same shall language in that? Your Honor, that language does continue in the statute. The statute goes on to include that language. For all those different, all the way down to a class 4, extended term for a class 4? Yes, that is indeed correct. So if you thought, I mean, having been on the trial court for 16 years and hearing a lot of felonies, if I may have finding that a person, through the pre-sentence investigation, had a prior class 4, then I have to sentence that person to a minimum of 3 years, 26 years? Yes. Your Honor, it is the defense's position that that indeed is the way in which the statute is worded. And I would add that the government, in its brief, did not have any authority to the contrary of that proposition. I would add further that the government did, in its argument in its brief, argue only that the court should, in determining whether or not that does impose the mandatory minimum, if those findings are made, the court should contrast that statute with 730 ILCS 5-5-8-1, which includes the language that requires a mandatory minimum in the event, for example, of a felon homicide. And that would be sent to which the government provided any authority to support the proposition that is the misconception of law to assert to you today that the extended term statute does indeed provide the mandatory minimum. But again, it's our position, Your Honor, that ultimately, in the review of this case, it matters not. Because if the court were to determine that indeed the extended term statute did require a judge to impose a mandatory minimum, once you made that finding exceptionally brutal and heinous to conduct, well then, of course, that was not a mandatory minimum in which the defendant was informed. If the court, alternatively, were to find that the statute does not require of the trial court a mandatory minimum once the finding of exceptionally brutal and heinous conduct is made, well, certainly then, His Honor, Judge Rapp was operating under a misconception of the law at the time of sentencing, and the sentencing could not possibly stand. You're saying that this is unambiguous based upon that one comment at the sentencing hearing where the court said, switching gears, and now we're going to decide, and I believe the language was a quote, once the finding was made regarding exceptionally brutal and heinous, to then decide whether an extended term should be imposed or natural life. That's the language. Isn't it arguable that the court is then deciding whether to impose an extended term as opposed to, I must now impose either an extended term or natural life? Your Honor, I believe the only correct interpretation of the judge's language, given what occurred, given the totality of the record, is that, in fact, Judge Rapp believed that he was confined at that point to want two alternatives, a natural life sentence or an extended term sentence, which shall be not less than 60 years. But doesn't he say, I must then decide whether? Yes, if I may, in the record at page 395, the quote exactly is as follows. Quote, now we shift gears after these two findings are made, that it was a direct intent to murder to kill, and that it was exceptionally brutal and heinous, to then decide whether an extended term should be imposed or natural life. This language used by the class court provides two and only two alternatives to the exclusion of all other alternatives under the sun. It does not provide any other alternatives if the court believed it was basic. Judge Kelly, in his ruling on the post-conviction petition, found that this language could indeed support the proposition that Judge Rapp believed that he was operating with only two alternatives. Now, I agree with the government that the standard of review on this issue is deniable, but it remains our position that clearly this language provides that Judge Rapp believed that now that he had made that finding of exceptionally brutal and heinous condom, he had only two options, extended term, which shall be not less than 50 years, or a natural life sentence. If we find that that language is ambiguous, then you would agree then that there's a presumption that the court knew and correctly applied the law? Well, I would, yes, to begin my answer, yes, I do agree that if this honor report were to find that there's some ambiguity in the language of Judge Rapp, then the court would have to, could presume that he knew the law unless that presumption is overcome by the totality of the record. Now, I agree with the government that the totality of the record supports the proposition that the court was not informed of the law and in fact gave a wide-ranging, inconsistent, and varying admissions to the defendant. If the court considers that proposition, Your Honor, in consideration of the totality of the record, it supports only the proposition that Judge Rapp was indeed operating under the conception that he had one of two alternatives, extended term is not less than 50, or a natural life. But right before he said that, when he was admonishing him, didn't he admonish him correctly? Did that same code read that the sentence for murder can be from 20 to 60 and it further reads that if there are certain circumstances, present and extended term sentences could be given up to 100 years or natural life without parole. So if you take his initial admonishment together with what he said when he, after he found that there was except for a reasonable and heinous offense, isn't it clear that he knew that it was not mandatory, that he was not, he was not limited to one or the other? I want to be very careful in my use of the term admonishment in response to Your Honor's question. The way we've been using admonishment within the context of these proceedings today is the admonishments that were issued to the defendant before he entered a plea of guilty. The words of Judge Rapp at the time of the sentencing hearing, I respectfully suggest, did not constitute admonishment within the context of the way in which we've been using that word today, and that is an important distinction. Why not? Because the admonishments that he gave to the defendant never include any reputation whatsoever of the extended term. At best, Your Honor, Judge Rapp, when admonishing the defendant, advised the defendant that he faced a sentence of, at one point, he did advise him 20 to 100 years, but there was never any discussion of the extended term. Well, he doesn't, he says, and for the reason that there are certain circumstances present, an extended term of sentence could be given, possibly 100 years or naturalized without parole. Does he say that? Yes, Your Honor, at the time of sentencing. Correct. He does say that. And it's my point, respectfully, that that did not constitute an admonishment, that that indeed did constitute language of the court at the time of sentencing, but it was the first time that the court had ever mentioned the extended term within that context. In all proceedings prior to that, the court had not mentioned the extended term by indicating that the sentence was 20 to 50 years, and if certain findings were made at the time of sentencing, then the extended term could be from 60 to 100 years. Would the federal rule 402 state that the court has to inform him and that he understands before accepting a guilty plea? Yes, that's what it does. And, in fact, that is precisely the issue that supports the proposition, and in this case the conviction simply must be vacated. Your Honor, the admonitions that were given to the defendant prior to the entry of the plea were wide-ranging, varying, and grossly inconsistent. And a review of the record is particularly instructive on this issue. Well, you know, you're certainly not suggesting that the court has to lay out any aggravating factors that would justify an extended term sentence, are you? I am not indicating that the court has to explain to the defendant the aggravating factors it would find under the existing case law, but I am arguing to the court that under Rule 402, and this element, of course, in transportation, as in 2006 in the case of People v. Taylor, the court has to do far more than it ever did on the issue of the paralegal that the defendant faced if, indeed, the trial doesn't need to find him for the trigger extended term. On February 23, 2005, when the defendant initially appeared before the trial court following his arrest the day preceding, the trial court informed the 17-year-old defendant that he faced the possibility of the death penalty, life imprisonment, for a length of 20 to 60 years. On March 14, 1995, at the time of his arraignment, the 17-year-old defendant was advised that he did not face the death penalty, that he faced a sentence of 20 to 100 years without reference to extended term, simply 20 to 100 years, or a sentence of life imprisonment which the trial judge characterized as, quote, a possibility which the court was not so sure about, end quote. On July 5, 1995, at the time of the jury waiver, the trial court advised the young defendant that he did not face the death penalty, that he did face the possibility of a mandatory life imprisonment, or he faced the possibility of a sentence of 20 to 80 years in the Department of Correction. The state's attorney, then state's attorney, now Judge Gunnison, corrected the trial court, and the court did correct his admonition then to say that it was 20 to 100 years. Now, on August 7, 1995, the defendant appears for a bench trial. And at the time of the bench trial, the defendant was characterized as a general plea. Curiously, the second counsel uses the language, quote, we are going to go ahead and generally plead as a 5-9-1. We are not pleading that we specifically intended to resolve the death of Ms. Wilkinson, but we are pleading guilty to 5-9-1, which is first degree murder, end quote. Significant, because ultimately the defendant was sentenced under a specific intent count, which apparently was expressly excluded by the language of the second counsel at the time of the presentation of the plea. Now, importantly, on this day, August 7, 1995, at the time of the guilty plea of the defendant, the trial judge said something important and interesting in the court's review of the case, and that is the defendant was reminded by the trial judge that he had been admonished before. I respectfully suggest to you that that certainly was refreshing the defendant's recollection of wide-ranging, varying, inconsistent, and contradictory admonitions that had been provided to him before. It, for lack of a better characterization, incorporated the erosions and admonitions that had been made to the defendant. Firstly, though, again, reading Rule 402, it is relevant at the time the guilty plea is accepted. Isn't that what 402 says? Yes. And was he admonished correctly at the time the guilty plea was accepted? No, he was not, for two reasons. First, while I certainly agree that Rule 402 requires that the court consider the admonitions tended at the time the guilty plea was accepted, it doesn't require the court to consider that in the vacuum, particularly where the trial judge incorporates into the admonitions the prior, inconsistent, wide-ranging, varying admonitions, which is what happened here. So that reminds the defendant you've been admonished before, and, in fact, you had been admonished before, several times, wrongly. The only incorrect admonishment, realistically, was, I understand that you're taking issue with the fact that the court didn't say the words extended term and sub-death, but as far as the term of years, the only incorrect admonishment we're talking about is back in February of 95, where he said 20 to 60, natural life or death, because, of course, it would be 20 to 100 on an extended term. On 3-14-95, the death penalty was no longer in play, and the court said 2100 or natural life, and then on 7-5, the court said 20 to 80, but then the state corrected the court, the court said yes, the max is up to 100 for natural life, and then on the day of the plea, 20 to 100 for natural life. So it seems, at least a quick review of this, without getting into this extended term argument that you have, that the court has to say those words. The only incorrect admonishment was the lack of 100 years as a maximum extended term sentence, way back in February of 95. Well, I would almost agree, but I would indicate that I have some concern, Your Honor, that I would not concede with respect to March 14, 1995, that my imprisonment was a, quote, possibility which the court was not so sure about. So I would respectfully suggest that with that accuracy, Your Honor, I would characterize it as otherwise. If we're to tell a defendant what the minimum and maximum penalties are, and it's clear that they're seeking an extended term sentence, I think the state was up front on that at one point, that they were going to seek an extended term sentence. Well, ultimately, it's an important question, Your Honor. The points and authorities that the state filed in which it sought the extended term sentence, actually, the state got natural life imprisonment, to be precise. That was filed on the day of sentence. So there was no indication earlier in the record that they were seeking an extended term sentence? Well, I don't think the record is as clear as it could be on that issue. I certainly think the record is clear that Judge Rapp was determining, based on the correction by then State's Attorney Gunnison, that 20 to 100 years was the sentence when the admonitions were made. So I don't want to answer you in the negative, because I do acknowledge that when Judge Rapp advised this young defendant that he faced a sentence of 20 to 80 years, State's Attorney Gunnison corrected Judge Rapp and said 20 to 100 years. So to that extent, I suppose, the state was indicating implicitly, perhaps, that it was seeking an extended term. But I don't think it's as clear as it should be that the state was seeking it. Certainly, we don't have on the record or part of the record the negotiations that were going back and forth between the state and the defense attorney. You do not have a record of those negotiations. But it certainly doesn't appear from the record that there were negotiations. Well, I guess if they had agreed to have an open hearing, there had to be some talk going back and forth, one can assume. Well, I don't think that that can be assumed. And, in fact, I think the opposite can be assumed. And I would argue in support of that proposition that the record does contain that Judge Gibbs and State's Attorney Gunnison had 70 witnesses on the subpoena for the day of bench trial. The parties appeared for the day of bench trial. The state was prepared to proceed to bench trial. And it was on the date of bench trial, August 7, 1995, that 70 witnesses were on the subpoena, and the state was ready to begin the opening that the plaintiff had completed. All right. That's correct. That could be the leaning in on the other place. Let's talk about the cases that you cite with respect to faulty admonishments. You cited the people versus Davis, people versus, I think, the Butler people versus Flanagan. All of those cases were faulty students on the day of the sentence, or the day of the plea. Were they not? Yes, ma'am. Then we don't have that here. Well, I respectfully suggest we do. In support of that proposition, I respectfully direct the Court's attention to its own decision in people versus Taylor. It's a 2006 decision cited in 368, Bill F-3703. In that case, the defendant pled guilty to aggravated battery and criminal trespass to residence. The defendant was admonished in relevant part in that case as follows. Quote, it is also punishable by a term in prison of two to five years in the Department of Corrections. If extended term applies, it's two to ten years. When the defendant also pled guilty to criminal trespass to residence, he was admonished as follows. That is here in relevant part. Quote, if extended term applies, the term is instead of one to three years in prison, it's one to six years in prison. This honorable court focused on the trial court's use of the term if, and ultimately held that the record in that case failed to demonstrate that the defendant knew that extended term sentencing was a possibility. Well, I think in that case and in the cases that we have handed down since then, we've been very aware of the past tense that the trial courts are using oftentimes with admonishments on the day of a plea versus the correctness of the sentence more so. You could be, you know, you could have been or you could be, and what I think we are focusing the trial court judges on is on the day of sentencing, you must say these are the penalties that you're going to get versus what you could have gotten. And I think that's what the Taylor case was more about, was it not? I was trying to suggest that Taylor focused on the proficiency of the admonitions with respect to the extended term issue. But didn't the trial court admonish you correctly that this is what you plead guilty to and this is what you could get today versus you could have gotten had you, you know, as opposed to past tense? Respectfully, Your Honor, Taylor instructs that my answer to you must be in the negative. Taylor instructs that in this case, in striking contrast to Taylor, the trial judge didn't even mention that he used the word extended term in the admonitions. What he did is he said 20 to 100 years. Now, I readily concede that 20 to 100 years includes that 60 to 100 years, but he doesn't even mention the fact that he's eligible for extended term. He doesn't mention the fact that if the trial judge makes the finding of exceptionally brutal and heinous conduct, he is going to sentence him to not less than 60 years. And so those admonitions were not made. I see that I'm out of time. Well, I think we're going to let you go on to talk about your ineffective assistance. Yes, Your Honor. I think that the ineffective assistance of counsel is extremely important. Here we have it is unrefuted that defense counsel confides with the undefendant that in fact he faced a sentencing range of 20 to 40 years. We certainly embrace the government's concession that this advice spoils paronia, and there's no point for us to go to any sentencing range for prison of 20 to 40 years. Again, the evidence is unrefuted. You have not only the affidavit of the defendant. How is it affected by the court's admonishment? I mean, I know you characterize the admonishment as being faulty, but it is correct in that the admonishment went way beyond 40 years. The trial court said 100 years, and then the trial court said natural life. Your Honor, thank you for the question. Ultimately, if you consider the totality of the record, this defendant had no idea what he was facing at the maximum sentence. You have a 17-year-old defendant who was told in the first court appearance that 20 to 50 years. At the time of the plea, 20 to 100 years was no mention of extended term after the defense counsel advised him 20 to 40 years. It's not conceivable that this defendant could possibly have known what the maximum sentence was and frankly what the mandatory minimum was under the extended term. Now, I want to very squarely address an argument that has been advanced by the government in this case, that there is no indication in the record that the defendant relied upon defense counsel's advice in the formulation of his decision to plead guilty. I respectfully direct the court's attention to the common law record 388 in the affidavit of this defendant. This is the last sentence of the fifth paragraph of the defendant's affidavit, and I read it verbatim. Quote, based upon this conversation and his advice, I accepted Attorney Schroeder's advice and agreed to plead guilty. I would respectfully argue that there's no ambiguity in that language. The defendant was indeed basing his decision to plead guilty, using that term, basing his decision to plead guilty on the incorrect, gravely incorrect advice of his counsel. Certainly, the court, as I argued in my brief, is aware of People v. Curry, which was a Supreme Court 1997 decision where the defendant rejected a plea offer after his attorney failed to inform him that he would receive mandatory consecutive sentences if convicted. The Curry court found that defense counsel's advice was objectively unreasonable and deprived the defendant of the intersected assistance of counsel. Here, you have objectively unreasonable, incompetent advice issued to the defendant, and that is coupled with an affidavit of the defendant that is unrefuted in the record, that the defendant relied upon that erroneous advice of his counsel in the determination to plead guilty. In order to exceed, you have to prove prejudice, right? Certainly, yes, but there's prejudice in it. So you have to show that but for the attorney's advice, he would have gone to trial. I would respectfully argue that I think that that takes the case law that is interpreting the Constitution in the state of Illinois a little farther than it exists, and I respectfully argue that it would be dangerous to go down the road of making a donation that it has to be but for the attorney's advice, where the advice is objectively unreasonable. Well, doesn't that what Peoples v. Fuller says? Your Honor, Fuller does stand for the proposition that the defendant, if there's no evidence in the record that the defendant relied upon that advice, then that advice, erroneous though it may be, is not sufficient to justify making the conviction. But here, you do have clear evidence in the record, unrefuted evidence in the record, that the defendant specifically relied upon the erroneous advice of his defense counsel in the formulation of his decision to plead guilty. So certainly we don't recognize in terms of the court in Fuller just that affidavit of the defendant that wasn't refuted. Okay, so the fact that the lawyer, your position is that the lawyer advised him correctly as what caused him to go to trial, or what caused him to plead guilty, and it had nothing to do with, as you said, the day of trial, and 70 witnesses roll into the courtroom and then he says, you know what, I think I'm going to plead guilty. So you're saying it two different ways. If he had never intended on going to trial or pleading guilty, he never made it clear whether he was going to plead guilty until the day of the sentencing hearing. So how do we know what had prompted him to plead guilty was what the lawyer said, or was it because they had traced 70 witnesses into the courtroom? There's absolutely no indication whatsoever on the record that the defendant was in any way whatsoever influenced by the fact that the case was set for bench trial and 70 witnesses were on the subpoena in the determination to plead guilty. So there's nothing in the record that shows that he was influenced by what the lawyer said other than his affidavit. Your Honor, with due respect, there's absolutely uncritical evidence in the record to support the proposition that he was influenced by the recommendation of his lawyer. His affidavit and his advance testimony. Well, his advance testimony and his affidavit, and I'll concede that his affidavit is most instructive on the issue. I'll concede that his advance testified as to what he was thinking, but that probably wouldn't be very persuasive. But the defendant unquickly asserted the basis upon which he made his decision to plead guilty. Again, using the language, based upon his conversation and his, referring to Attorney Schroeder's advice, I accepted Attorney Schroeder's advice and agreed to plead guilty. It was based upon his conversation and his advice. That conversation being unrefuted. That advice being unrefuted. The fact that that advice was grossly erroneous being unrefuted. It was based upon that, Your Honor. And to suggest that it might have been based upon some concern over the ominous nature of 70 witnesses prepared to testify at trial. I wrote that up in response to Your Honor's question about whether or not there were discussions between defense counsel and the prosecution earlier, and I simply asserted that the fact that the case was self-defense trial was based on what was written for any subpoena. So, of course, the proposition that there really weren't meaningful dialogue or conversations of dialogue between counsel prior to that day. You have, the cases that you have shown, you have submitted to us, none of those cases, again, where there's an improper admonishment or an improper advice by the trial attorney, the defense attorney, none of those cases then show a follow-up with the trial court of a proper admonishment. Do you have any cases where that is almost close to what we have here? No, Your Honor, I do not. And I would respectfully suggest that I'm not aware of any cases that suggest the contrary. And, again, I'm not prepared to concede that the defendant was ever properly admonished by the trial court prior to the admission of the guilty plea. To the contrary, I believe that he was improperly admonished by the trial court up to and, and I say this advisedly, up to and including at the time that he entered the court. Counselor, you also have three votes. Mr. Daly, if you could begin by, counsel has relied on you versus Taylor. Can you distinguish that face at all? Yes, Your Honor. Taylor actually deals with the statute. Let me pull up here real quick. In 730 ICS 5-5-8-2B, so the shell hearing record that the plea is under defends knowledge of an extended term sentence as a possibility. Okay. And that in the absence of that knowledge, the defendant should be given the opportunity to withdraw his plea. Taylor, there's really kind of two parts I can talk about Taylor. The first part is in regards to the admonishments. My interpretation of Taylor as I read the admonishments in that case is that they were very equivocal and hesitant in the sense that this is a possibility and this is something that might happen. It wasn't given to the defendant in terms that made it expressly clear that this is what you are being subjected to as a matter of the sentencing range. And I think if you read the language of this court in Taylor, that is what caused a lot of problems. To draw an analog of a case of mine in the Woodfield context is a little bit the same thing where the defendant was improperly admonished in regards to the mandatory supervisor's lease in accordance that if you went to trial, this is what you might get as a matter of mandatory supervisor's lease. And the Fifth District held that that's not a proper admonishment because it doesn't make clear to you this is what you're going to get. It says this is a possibility under a certain condition. And that's kind of like what happened here in Taylor. Is it a company? It was a... There's a whole lot going on. Mine was the first one. I don't remember the name of it anymore. Bad memories are blocked out of my head. But I think that the second part of Taylor is also important. Taylor also says that, and this does feel, I think, with what I argue with regards to the Peoples v. Cailin case of the District, and I'll talk about that here in a second. Taylor also said that in this statute, you don't have the opportunity. You have to have the opportunity to withdraw your guilty plea. In Taylor, I believe the defendant was re-sentenced after a revocation of probation. So in well past 30 days in which the defendant has the opportunity to file a motion to withdraw a guilty plea. So clearly, he's not been afforded the opportunity to, for that, which is provided for in 5HH2B, the opportunity to withdraw a guilty plea with regards to improper admonishment regarding the extended term sentence. The remedy imposed there was a vacation of the extended term sentence. In other words, it doesn't, 5HH2B doesn't nullify the plea. It doesn't render it unknowing. It basically says we're not going to hold you to an extended term sentence. In other words, we're going to chop off an extended term sentence. If you haven't been given knowledge of the sentence, there's a possibility of an extended term sentence. Caitlin's, I think, is an interesting case in this regard. First of all, if we happen to accept a proposition and the court acknowledges that there's a range of 20 to 100 years or an actual life, but that doesn't encompass a sentence, which is an extended term sentence. In other words, does the court have to use the magic word extended term sentence as a possibility? Caitlin's held that, well, what happened to Caitlin's is the court told the defendant you're looking at 6 to 30 years as a class X offender. But what it really wound up being was a sentence based upon an extended term sentence, 7 to 14, I think is what it was. But he was admonished 6 to 30 and was ultimately sentenced to something between 7 and 14. I don't remember the exact sentence. And Caitlin said, well, yes, the defendant was not admonished about an extended term sentence, but he was given the range, a range in which his sentence fell within. In this regard, the defendant was given the exact precise range for an extended term sentence, 20 to 100 years of life. So they think it's probably a better admonishment than what the defendant got in Caitlin's. Second of all, the court in Caitlin's pointed out that what the statute says is that you have to be given, quote, the opportunity to withdraw guiltily. There's nothing in Caitlin's which said the defendant has, quote, denied the opportunity to file a motion to withdraw guiltily, so therefore they weren't going to afford the defendant a remedy in that case. Well, what we have in this case is the defendant was given the admonishment 20 to 100. There's no mystery about what the possibilities were. The state had filed a brief or a memorandum asking for natural life. It may have been filed the day of the hearing. I don't know, but nonetheless, it's pretty obvious that this is what the state was asking for. This is what the court imposed. No matter how you look at the court's decision in terms of rendering a 75-year sentence, it says an extended term sentence based upon rule or handling indicative of a wrong or cruelty. The defendant never filed a motion to withdraw guiltily. The defendant never expressed any surprise, shock, dismay, or anything with regards to the fact that an extended term sentence wasn't closed. So that being the case, given the fact that the range of admonishment was proper, the defendant had the opportunity to withdraw guiltily. I don't think the Taylor case law applies at all in this case, either based on the admonishments or on the circumstances of the sentence itself, because, again, in Taylor, this is a post-revocation case. You can't file a motion to withdraw guiltily at that point in time. To go back to some of the other things that counsel talked about, I do want to talk about interpretation of the statute with regards to a mandatory imposition of extended term sentence. Just so it's clear, the defendant making this argument at the state, so it's a bit disingenuous to argue that the state hasn't supplied any case law to refute the propositions which the defendant himself might file in a case law. But I think it doesn't really require much more than basically a look at the plain language of the statute. To read what counsel talked about here, it says that where a judge finds that such factors are present, those factors being the aggravating circumstances listed in 5-5-3.2, amongst which is the brutal or heinous finding, he may sentence an offender to the following. Quote, for first-degree murder, term shall be not less than 60 years and not more than 100. Now, obviously, statutes have to be read in a manner to give them a logical application. If it's mandatory for the circuit court to impose an extended term sentence once it makes a finding that brutal or heinous exists, then the statute should read, where the judge finds that such factors are present, as the judge in this case did, he shall sentence an offender to the following. Well, for first-degree murder, term shall be, et cetera, et cetera. But the legislature didn't say shall. The legislature said may. The court's not required to impose an extended term sentence. The only thing that shall refers to is just what the range of an extended term sentence should be if it's imposed. That's the only logical interpretation of the statute. I cite a number of cases. To be honest with you, I did the research. I couldn't find any case to talk about whether this is or isn't mandatory. It would be very wrong of me because it seems fairly obvious on the face of the statute that it's not. But the cases that I do cite do talk about generally the court's discretion in the sense of imposing an extended term sentence and talk about the fact that it extends the range that the court is allowed to do. Let me stop you here. How do you respond to the quote that counsel read, that now we switch gears after these two findings are made, that it was a direct intent to murder, to kill, and it was especially brutal or heinous, to then decide whether an extended term should be imposed or natural life? All right. I would urge this court to read the sentence you hear in this entire context. You know, obviously, as a matter of necessity, we sort of parse out a sentence that's here to come to conclusion, and that's more or less what the circuit court did here. But what you see happening is that the court, as we talked about before, started by saying, well, it could face those. Then the court goes through a lengthy dissertation of the facts, and it decides whether or not an extended term sentence is appropriate given the facts, as is brutal or heinous. Clearly, at that point, the court had made the decision that it was going to impose an extended term sentence, at least, or natural life. So it started out as the option of knowing that it didn't have to impose an extended term sentence. But at that point, I think the only clear interpretation that we can give of this, especially according to judge, the presumption that it knows and correctly applies the law, that it was merely articulating the belief that it was an extended term sentence as appropriate. So are we going to give them an extended term sentence, or are we going to give them a natural life? I mean, I think that's probably the most charitable interpretation to the defense of that. As the court talked about when the defense counsel was up here, you could even argue that by saying whether, I mean, we're looking at a cold record, so we don't see the judge, we don't see how he's going through this, so we're hamstrung in that sense of it. But even by mentioning the word whether, one could argue that he's still even deciding whether or not to impose an extended term sentence. I'm saying that. My opinion, personally, is that he had already decided he was going to. He was just trying to decide whether it was going to be an extended term sentence or natural life in prison. But he'd already gone through the whole litany of factors that lead up to that. So there's nothing shocking or incorrect about this. The words, I must impose this, I have no choice but to impose this, the statute requires I impose this, none of these words which would affirmatively show on the record that the judgment, Lieberman or misapprehension of the law exists in this case. I mean, we're trying to stick this square peg in a round hole here, and it's just not working. Is there anything else the Court wants me to discuss? One more thing that I have missed. A counsel pointed out on this issue of prejudice as to the counsel's improper advice. Yes. That the affidavit, the defendant's affidavit, at the end of that paragraph, that he cited indicated that he pled guilty because of that advice. I think that the affidavit only goes part way. Because all it says is that, if you read the affidavit, it says, He told me I'll probably get 30 years. He told me I won't get any more than 40 years. After the counsel told him all this, he decided to plead guilty. Now, it's interesting to look at the Hill v. Lockhart. They put some emphasis on the fact that there's nothing in the record to show that there's some particular special significance to some aspect of what the attorney told them that prompted the defendant to plead guilty. There's nothing in the affidavit where the defendant, he had a chance to testify. Okay, so we're going by what the affidavit says. The affidavit just says, He told me this, and so I decided to plead guilty. He didn't say, Knowing that I couldn't get more than 40, and that the judge said 60 and 80, but I guess I'm only going to get 40, I'm going to go ahead and go ahead and plead guilty. None of that is in there. I'm sorry, but the defendant's burden to prove the prejudice is not the state to presume in the matter, but the defendant has to show more than simply saying, This is what my attorney told me, and therefore I decided to plead guilty. Okay. If that 40 years, which, of course, has got to be read also in the affidavit, the attorney's only thinking of getting 30, so that may have influenced him just as equally as anything else. Or maybe he's just tired of what was going on. We don't know. I mean, we're left with basically a one-page affidavit that doesn't present any particular significance on this admonishment itself in regards to the masking of the sentence, which spurred him to go on the court and plead guilty in the affidavit because he's not going to get more than 40 years in prison. It just doesn't fit. You know, I would say that the defendant had ample opportunity to clear that up. I do want to, if I can, I know I'm going to run out of time, but I want to say one thing, that in the defendant's reply brief, I do want to make this bother me a little bit, they point out that the defendant's assignment is verified in London Petition for Post-Conviction Relief in Paragraph 15. They quote, Had Petitioner known the potential sentence, or that he was subject to an extended term sentence, or that he was subject to a period of mandatory supervisory release, he would not have pleaded guilty in this case. He would have persisted in his demand for trial, which is the statement probably a little closer to what Hill is seeking. The problem, of course, is it's not evidence. This is a verified complaint. You know, to look at this through the prism, I guess, of the rules of civil procedure, 735 ILCS 5-2-6057, the verification of pleadings, the verification of allegations, do not constitute evidence except by way of an admission. But under the Post-Conviction Act, we can't look at the affidavit as evidence. The affidavit is absolutely permissible. In fact, under 122-6, it's supposed to state the affidavit. But there's a difference between the affidavit and the verified petition, and that's my point, that the defendant seems to be insinuating here that we can look at this petition as constituting evidence of the defendant's subjective decision-making with regards to the fact that he didn't know that there was going to be a sentence greater than 40 years or extended term sentence. So I just want to make clear to the Court that I would not have the chance to survey about that, but that's not really a proper argument, but that's not evidence of anything. All verification is essentially saying that I'm standing in the allegations, they're my allegations, and that they're the contents of what I want to say. Does the Court have any other questions? I appreciate your time. Thank you, Counsel. I do want to indicate that normally we try to set the arguments for Fifth District attorneys later in the day. Earlier is better. Earlier is better? Absolutely. I'm trying to set them later when we have more arguments. No, I usually come up the night before, so it gets me out of here quicker, and as long as the time is set, I'll drive back. Thank you. Thank you. Mr. Lewis. Thank you. Now, we can take this as an attorney to that argument at 6.30 a.m. I'm not coming at 6.30. I'll be very brief, Your Honor. I just want to make the observation, Your Honor, that with respect to the interpretation of the record in this case, the government asked the Court to engage in conjecture because the record simply does not support the position the government advances. As to the issue of the conception that the trial judge had at the time of sentencing, it is clearly not. In fact, the government referred to this language as unambiguous, and I tend to agree. It's unambiguous in the record that Judge Grant believes that once he had made the finding, and he conditioned it, because once he had made the finding of direct intent to murder, to kill, and that it was exceptionally brutal and heinous, he is then left with one of two options, whether an extended charge should be imposed or natural life. Now, the government argues that, well, this language doesn't suggest that the judge believed that he was limited to those two options, but I respectfully argue it absolutely does. With respect to the affidavit of the defendant in this case, with respect to Attorney Scherger's advice, it is clear that the defendant states that he formulated his decision to plead guilty, quote, based upon this conversation, the conversation about the penalty range being 24 years, based upon this conversation and his advice, I accepted Attorney Scherger's advice and agreed to plead guilty. To argue that that doesn't go far enough, that somehow the defendant is required to have even more to support the proposition that he was formulating his decision to plead guilty, based upon that advice, I respectfully suggest is an absurdity. Unquestionably, the unreputed, uncritical record in this case establishes that the defendant's decision to plead guilty was based upon the defense counsel's erroneous advice, and that, in and of itself, reflects prejudice. Let me point to you, because you never got to this point and neither did your opponent, with respect to failure to call witness on reinvestigation. Ms. Gurdes, is that the name? Steve Gurdes, yes. The amended post-conviction petition alleges that the failure of defense counsel to call Steve Gurdes at the time of the sentencing was prejudicial to the defendant. The court observes correctly that there wasn't a lot of argument on that issue before you today, nor, frankly, was there a ridiculous discussion in the brief. I would argue that there was some argument in the brief, not only on the issue of why Steve Gurdes should have been called, the insight that he could provide on the issue of the sentencing, but also the totality of the conduct of defense counsel, frankly, in showing up at proceedings that are intended for one thing and then converting the result to something else. For example, the bench trial converted to a plea of guilty. So you've gone through that in its totality? Yes. Because in and of itself, I mean, how would Mr. Gurdes' testimony have counteracted the highly damaging testimony, if you will, of the other three witnesses? Well, it's anticipated in the affidavit of Steve Gurdes that supports the proposition that if, indeed, the defendant had had a conversation such as that which is alleged within the Gurdes affidavit, that that would have been inflected on the issue whether there was premeditation. Sure. And so certainly since his honor, Judge Rapp, considered premeditation in the determination of whether to impose an extended term, the Gurdes testimony would have rebutted that premeditation. Now, I should be a little more clear than that. The government, in its brief, argued that never once did Judge Rapp use the word premeditation in his finding of extended term eligibility for the defendant. I agree he did not use premeditation in his finding. I believe that that's what Judge Rapp was getting at when Judge Rapp said, once I made the two findings that there was direct intent to murder, to kill, that what he meant by that was premeditation. And Gurdes would have rebutted that. I'll concede that the Gurdes testimony would not have rebutted the heinous and brutal finding that Judge Rapp ultimately found when he imposed the extended term. On the day of the plea, was the defendant at all free of the murder counts that he felt he was? On the day of the plea, I don't believe so. I think the court took a plea without reviewing the indictment. No, I won't say that. The indictment was fully read to the defendant on March 14, 1995 at the time of the arraignment. On that day, the court found the indictment was fully read to the defendant. I don't believe so. That's my recollection. My recollection is the only time in the record, and certainly I wish I had that in front of me right now, but my best recollection is that I stand before you right now and the only time that the indictment was fully read to the defendant was on the day of March 14, 1995 at the time of the arraignment. And it is significant to note that when Attorney Schroeder indicated that there had been a general plea and he excluded specific intent, we have to refer back to the indictment because specific intent was the first count, which was the count on which his ultimate offense. And apparently that was excluded from the plea. And I have to add that Judge Rapp didn't respond to Attorney Schroeder when Attorney Schroeder said we are not pleading that we specifically intended to kill, and he used the pronoun we. But Judge Rapp responded by stating that a general plea is the equivalent of a general verdict to all counts. But ultimately Judge Schroeder left the issue of whether or not defense counsel, by his words, had expressly excluded the very count of the indictment on which the defendant was ultimately convicted and sentenced. There was never any discussion of that. And quite frankly, in preparing this appeal, in preparing the challenge on post-conviction, I found it difficult myself to comprehend what was ultimately intended by a general plea. We don't see that a lot in the records of other trial proceedings where there's just the entry of a general plea with language expressly excluding a count of the indictment on which the defense ultimately would be convicted and sentenced. Do all the parties agree that this issue of intent would be fair game in the sentencing game? I agree with you about the unusual language here. I mean, at the time of the intended plea, it's a really unusual language. Do you think that counsel may have been misspeaking about the aggravated factor of premeditation in a cold-calculated manner? Perhaps counsel was speaking on that, that we're not pleading guilty to premeditation in a cold-calculated manner of the crime. You know, we're not pleading guilty or agreeing to this aggravated factor. Well, if he was attempting to exclude aggravated factors, he certainly made no mention of brutal and heinous crimes. And I would add further that there's, I think, a more plausible explanation. That is that the indictment had two other counts that did not involve specific intent. And I think he was, in an unlawful way, attempting to guide the conviction to count two or count three of the indictment as opposed to count one, yet tendering a general plea, which was accepted as being a plea to all counsel, therefore gave a right for conviction to exclude count one. To suggest that it's a confused record on that point would perhaps be understated. Thank you. Thank you, counsel. I think we'll pass it for the evidence today, no matter what we think of the indictment with the decision rendered in due course.